UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, <br> 1800 Massachusetts Ave, NW <br> Suite 301 <br> Washington, D.C. 20036, <br><br> and <br><br> BOARD OF TRUSTEES OF THE SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, <br> 1800 Massachusetts Ave, NW <br> Suite 301 <br> Washington, D.C. 20036, <br><br>            Plaintiffs, <br><br> v. <br><br> THE CANTERBURY AT CEDAR GROVE CARE & REHABILITATION CENTER, LLC, <br> 398 Pompton Avenue <br> Cedar Grove, NJ 07009 <br><br>            Defendant. | Case No. 21-1982 |

## **COMPLAINT**

1. This is an action for legal and equitable relief brought pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132, 1145 by the Service Employees International Union National Industry Pension Fund (the "Pension Fund"), an employee benefit plan, and its Board of Trustees ("Board of Trustees") to enforce the obligations of Defendant The Canterbury at Cedar Grove Care & Rehabilitation Center, LLC, referred to as ("Defendant"), to make pension contributions and to provide remittance reports to the Pension

1

Fund, as well as to obtain judgment for delinquent contributions, together with interest, contractual and statutory liquidated damages, attorneys' fees, and other costs as to which Defendant is responsible under the terms of collective bargaining agreements and the Pension Fund, and under ERISA.

2. The Court has jurisdiction over the ERISA claims asserted below under the terms of ERISA Section 502(e)(1), 29 U.S.C. §§ 1132(e)(1), and ERISA Section 515, 29 U.S.C § 1145. In addition, the Court has jurisdiction over all claims asserted below under 28 U.S.C. § 1331.

3. Venue is proper in this district pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2) because the Pension Fund is administered in this judicial district.

## Parties

4. Plaintiff Pension Fund is a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Pension Fund is an employee pension benefit plan within the meaning of Sections 3(2), (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and it is established and maintained for the purpose of providing retirement benefits to eligible employees of participating employers. The Pension Fund is also a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A). Retirement benefits to eligible employees are funded by contributions of participating employers.

5. The Pension Fund is administered at 1800 Massachusetts Avenue NW, Suite 301, Washington, DC 20036.

6. Plaintiff Board of Trustees administers the Pension Fund for the benefit of the participants and beneficiaries of the Pension Fund. Plaintiff Board of Trustees is a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and the named fiduciary of the Pension Fund within the meaning of Section 402 of ERISA, 29 U.S.C. § 1102(1), and is

authorized and empowered to maintain this action.

7. Defendant The Canterbury at Cedar Grove Care & Rehabilitation Center, LLC ("Canterbury") is an "employer in an industry affecting commerce" as defined in Sections 3(5), (9), (11), and (12) of ERISA, 29 U.S.C. §§ 1002(5), (9), (11), and (12). Defendant Canterbury's principal place of business is located at 398 Pompton Avenue, Cedar Grove, New Jersey 07009.

8. Defendant Canterbury is a limited liability company residing and doing business in the state of New Jersey, where it operates a nursing home and rehabilitation facility.

**Factual Background**

9. At all times relevant herein, Defendant Canterbury has been a party to a series of collective bargaining agreements ("CBAs") with 1199 SEIU United Healthcare Workers East, New Jersey Region ("the Union") under which it was obligated to make contributions to the Pension Fund on behalf of all covered employees under the CBAs at a rate of "2.4% of gross earnings," excluding overtime pay, payments for Uniform allowance and unused sick leave payout.

10. The CBAs provide that, "[c]ontributions required by this provision shall be paid to the Fund on or before the fifteenth day of the month following the period for which contributions are due or before such date as the Trustees may hereafter determine."

11. In the CBAs, Defendant Canterbury also expressly agreed to be bound by the provisions of the Pension Fund's Agreement and Declaration of Trust ("Trust Agreement"), as amended from time to time, and by all resolutions and rules adopted by the Board of Trustees under the Trust Agreement, including employer contribution collection policies adopted by the Pension Plan.

12. Article III, Section 3.02 of the Trust Agreement provides that, "[a]n Employer shall contribute and pay Employer Contributions to the Fund in the amount and at the time specified in

the applicable collective bargaining agreement with the Union or participation agreement with the Board of Trustees."

13. Article III, Section 3.04 of the Trust Agreement further provides:

> [i]f an Employer shall fail to contribute and pay Employer Contributions to the Fund when the same shall be due and payable, the Employer shall be considered delinquent and in breach of the Trust Agreement, and shall pay, in addition to, or in lieu of, other remedies provided by law liquidated damages, plus interest on the total delinquency. Said costs, charges, damages, and interest shall be due as provided for in policies and procedures established by the Board of Trustees for that purpose.

14. The Board of Trustees has adopted a Statement of Policy for Collection of Delinquent Contributions ("Collection Policy"), to which participating employers, including Defendant Canterbury, are bound. Under the Collection Policy in effect and binding on Defendant, an employer who is delinquent in making contributions owes to the Pension Fund:

   a. net contributions due, including all monthly delinquent contributions, supplemental contributions and surcharges;

   b. interest on late payments (any payments not received by the last day of the month in which the contribution was due) at the rate of ten percent per annum until payment is received;

   c. interest on net contributions due at the rate of ten percent per annum;

   d. liquidated damages on any payments "received later than the 15th day of the month following the month in which the contributions were due." In the case of such payments, "the Employer shall be obligated to pay liquidated damages in the amount of 5% of the Monthly Contributions Owed," with a minimum payment of $50 per month. Where litigation has commenced, the Employer is obligated to pay liquidated damages in the amount of the greater of (i) the interest owed on the

delinquent contributions or (ii) twenty percent (20%) of the contributions owed.

15. Where an employer is delinquent in its contributions, Article III, Section 3.04 of the Trust Agreement provides that,

> [t]he Board of Trustees may take such steps, including the prosecution of or the intervention in any proceedings at law, in equity or in bankruptcy as it may deem necessary or desirable, in order to collect delinquent Employer Contributions, and the delinquent Employer shall be liable for the Trustees' reasonable expenses, including, but not limited to, attorney's fees and other disbursements, incurred in the collection of such delinquent Employer Contributions.

16. In addition to the obligation to contribute 2.4% of covered employees' gross monthly wages, Defendant is obligated to make supplemental contributions to the Pension Fund pursuant to a Rehabilitation Plan developed in accordance with the Pension Protection Act ("PPA"), and as further described below.

17. On March 31, 2009, pursuant to the PPA, the Pension Fund's actuary certified that the Pension Fund was in "critical status" for the plan year beginning January 1, 2009. The Pension Fund's actuary subsequently has certified that the Pension Fund remains in critical status for each plan year from 2010 through 2021.

18. Participating employers in the Fund were notified of the Plan's funding status via letters sent each year.

19. In November 2009, the Trustees adopted a "Rehabilitation Plan" in compliance with 29 U.S.C. § 1085(e)(3). That Rehabilitation Plan, as amended, has remained in effect at all times relevant here. The Rehabilitation Plan included two schedules of contribution increases and benefit reductions, known separately as the "Preferred Schedule" and the "Default Schedule," and required participating employers to incorporate one of these schedules into their CBAs.

20. Participating employers were notified of the Rehabilitation Plan in November 2009.

21. In June 2014, Defendant Canterbury entered into a Memorandum of Agreement

("MOA") with the Union, which modified the terms of the CBA. Under the CBA modification, Defendant Canterbury agreed to remit additional supplemental contributions pursuant to the Default Schedule of the Rehabilitation Plan, effective August 1, 2013, in amounts equal to 62.5% of the originally bargained 2.4% of contributions due from August 1, 2013, and thereafter.

22. Under the Collection Policy, an employer who is delinquent in making supplemental contributions owes to the Pension Fund, in addition to the net supplemental contributions due, interest on late supplemental contributions, interest on net supplemental contributions, and liquidated damages under the formula described in Paragraph 14.

23. Independent of the pension contributions and supplemental contributions described above, Defendant has been required, pursuant to the CBAs and the Trust Agreement and Collection Policy provisions, to provide the Pension Fund monthly reports detailing, *inter alia*, covered hours worked or owed, contributions owed, and contributions paid ("remittance reports"). The CBA provides that "[c]ontributions shall be transmitted together with a remittance report containing such information, in a manner, and on such form as may be required by the Fund or their designee."

24. These remittance reports must be sufficient to show the amount of contributions and supplemental contributions owed by an employer for the contribution month to which the report pertains. Without appropriate remittance reports, the Fund cannot determine the correct amount of contributions owed, or if the employer's remittances are accurate.

25. Under the Pension Fund's Collection Policy,

> [i]f the Fund Office has not received complete and correct remittance report(s) necessary to determine the amounts owed by the Employer, the Fund Office shall estimate the contributions due based on the most recent remittance report submitted to the Fund, payroll information, or other basis as reasonably determined by the Fund, and the Employer shall be deemed delinquent in its contributions in that amount on a monthly basis, as a minimum, in any subsequent legal action.

28. During contribution remittance periods from July 2015 through May 2019,

Defendant remitted contributions and supplemental contributions to the Pension Fund, but failed to make required contributions in a timely manner or in correct amounts. To the extent that Defendant underpaid, or tardily paid contributions owed, Defendant owes interest and liquidated damages on those late and/or underpaid payments. To date, the total principal amount of delinquent contributions owed for the period July 2015-May 2019 is $8,669.52, and interest owed to date on those delinquent or tardy contributions is $4,206.26. Interest continues to accrue under the terms of the Trust Agreement and Collections Policy.

29. For contribution remittance periods beginning July 2019, Defendant has remitted no contributions or supplemental contributions owed to the Pension Fund. Defendant also has failed to provide remittance reports to the Pension Fund for these periods.

30. As a result of Defendant's failure to provide remittance reports since July 2019, the Pension Fund cannot ascertain the exact amount of contributions due for those months. Accordingly, pursuant to the Pension Fund's Collections Policy, the Pension Fund has estimated the contributions due for this time period based on prior remittance reports submitted by Defendant. Through the June 2021 remittance period, the total estimated principal amount of delinquent contributions is $134,330.75. The total estimated interest on the delinquent contributions is $14,008.67. Interest continues to accrue. If appropriate records, once obtained, reflect that Defendant's contribution obligation is greater than the estimated amount, Defendant is liable to remit the full amount of the contributions actually owed, as well as interest and liquidated damages.

31. Prior to commencing this lawsuit, the Pension Fund notified Defendant of its delinquencies, including its interest and liquidated damages obligations, and made numerous attempts to obtain the outstanding remittance reports and amounts of contributions, interest, and

liquidated damages owed. To date, Defendant has failed and/or refused to provide a satisfactory response to the Pension Fund's attempts to resolve Defendant's deficiencies without instituting litigation.

### Count I
Pursuant to Section 515 of ERISA

32. Plaintiffs reallege and incorporate Paragraphs 1 through 31.

33. Defendant has been delinquent or tardy in its contribution obligations to the Pension Fund for the contribution months of July 2015 through May 2019 in the principal amount of $8,669.52, by virtue of its failure to pay timely and in complete amounts the contributions and supplemental contributions required by the CBA. Defendant also owes additional payments constituting interest and liquidated damages on late and/or underpayments for the aforementioned contribution months. The interest owed to date is $4,206.26. Interest continues to accrue.

34. Defendant has failed altogether to make contributions and supplemental contributions for employees covered by the CBAs and the Pension Fund for the contribution months beginning June 2019. Defendant has also failed to submit any remittance reports for these contribution periods. Without these remittance reports, the Pension Fund is unable to determine the precise amount of delinquent contributions due for these months. Based on estimating procedures provided by the Pension Fund's Collection Policy, Defendant is liable for, at a minimum, estimated delinquent contributions in the principal amount of $134,330.75 and an estimated interest through July 31, 2021, in the amount of $14,008.67.

35. Defendant's failure to make their required contributions pursuant to the terms of the plan and CBAs constitute violations of Section 515 of ERISA, 29 U.S.C. § 1145.

36. Under Sections 515 and 502(g)(2) of ERISA, 29 U.S.C. §§ 1145 and 1132(g)(2), the CBA, the Trust Agreement, and the Collection Policy, Defendant is liable to the Pension Fund

for the full amount of all delinquent contributions, plus interest at the rate of ten percent (10%) per annum on all delinquent contributions, liquidated damages in the amount of the greater of the accrued interest on the delinquent contributions or twenty percent (20%) of the delinquent contributions, attorneys' fees, and costs of this action.

### Count II
Pursuant to Sections 502(a)(3) and 515 of ERISA

37. Plaintiff's reallege and incorporate Paragraphs 1 through 36.

38. Defendant is obligated, under the terms of the CBA and the Pension Fund's rules, to provide remittance reports along with contributions and supplemental contributions to the Pension Fund.

39. Under Sections 515 and 502(g) of ERISA, 29 U.S.C. §§ 1145 and 1132(g)(2), the CBA, the Trust Agreement, and the Collection Policy, Defendant is liable to the Pension Fund for the full amount of all delinquent contributions (including supplemental contributions), plus interest at the rate of ten percent (10%) per annum on all delinquent contributions, liquidated damages in the amount of the greater of the accrued interest on the delinquent contributions or twenty percent (20%) of the delinquent contributions, attorneys' fees, and costs of this action.

40. Notwithstanding Plaintiffs' efforts to secure Defendant's voluntary compliance with its contractual and statutory obligation to make contributions to the Pension Fund and to provide appropriate remittance reports, Defendant continues to fail and/or refuse to make such payments in a timely manner and refuse to provide necessary remittance reports or other records required by the Pension Fund and the CBA.

41. Defendant's failure to comply with its contribution and reporting obligations owed to the Pension Fund constitute violations of the CBA, the Pension Plan, and ERISA.

42. Under ERISA 502(a)(3) and federal common law Plaintiffs are entitled to enforce the terms of the CBA and the Pension Plan, and are entitled to all appropriate equitable relief, including an injunction to require Defendant to comply with its remittance reporting obligations and future contribution remittance obligations.

### *Prayer for Relief*

**WHEREFORE**, Plaintiffs request the following relief:

A. A judgment ordering Defendant Canterbury to pay the Pension Fund:

1. All delinquent contributions Defendant is determined to owe the Pension Fund;

2. Interest that has accrued on all delinquent contributions, at the rate of ten percent (10%) per annum;

3. Interest that continues to accrue on all delinquent contributions, at the rate of ten percent (10%) per annum;

4. Liquidated damages on all delinquent contributions, in the greater of the amount of accrued interest at ten percent (10%) per annum, or twenty percent (20%) of the delinquent contributions;

5. To pay to the Plaintiffs their reasonable attorneys' fees and costs of this action, as set forth in Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2); and

B. An order enjoining Defendant to comply with the Collective Bargaining Agreements and the Trust Agreement obligations to submit monthly remittance reports to the Pension Fund in a timely manner, to provide all outstanding remittance reports, and to make all future payments due to the Pension Fund in a timely manner; and

C. Any such further relief this Court may deem just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Date: July 21, 2021 | /s/ Robert W. Alexander<br>Robert W. Alexander, Esq. (DC Bar ID: 465673)<br>Bredhoff & Kaiser P.L.L.C<br>805 Fifteenth Street, N.W., Suite 1000<br>Washington, D.C. 20005<br>(202) 842-2600<br>(202) 842-1888 (fax)<br>ralexander@bredhoff.com<br><br>*Counsel for the Plaintiffs Service Employees International Union National Industry Pension Fund and the Board of Trustees of the Service Employees International Union National Industry Pension Fund* |

## SERVICE UPON SECRETARY OF LABOR AND THE SECRETARY OF THE TREASUREY

A copy of this Complaint will be served upon the Secretary of Labor and the Secretary of the Treasury by certified mail.